THE TRUSTEES, ETC., OF THE TOWN OF EAST HAMP-
TON, APPELLANTS, *v.* OSIAH KIRK, RESPONDENT.

*" Beach " — meaning of, in deed — local use of word — evidence as to.*

A tract of land, situated in Suffolk county, was conveyed to the defendant's grantor, the deed describing it as bounded northwesterly by the " clift or beach." *Held*, that the land conveyed extended to high-water mark. If the words "beach" and "clift" were, at that time different points, then the grantee would take to the beach, the farthest point indicated.

The word "beach," when used in conveyances of land fronting on the sea, or on bays, means the tract of land lying between high and low-water mark.

After the defendant's grantor had entered into possession of the farm, certain persons occasionally took sea-weed from the seaward front thereof. *Held*, that in the absence of any proof that it was taken under claim of title, the taking was presumptively referable to a tacit license, or to casual trespasses,

and did not constitute any hostile possession, sufficient to interrupt the general possession of those claiming under the deed.

The defendant offered to prove that the word "beach," as used in Suffolk county, included all the sandy territory between the upland and high-water mark. *Held*, that the evidence was inadmissible, and was properly rejected.

APPEAL from an order denying a motion for a new trial, made upon a case and exceptions.

*George Miller*, for the appellant.

*E. A. Carpenter*, for the respondent.

TALCOTT, J.:

The appeal in this case is from an order of the Special Term, denying a new trial. The action is ejectment, and the controversy is concerning the title to a narrow strip of land lying along the sea front of the defendant's farm, situate at a place called North-west in the town of East Hampton, in the county of Suffolk. The only questions, presented by the appellant, relate to the construction put by the court at the Circuit upon the description contained in a deed, made in 1810, by Daniel Dayton and Miller Dayton to Jonathan B. Mulford, which was introduced as the foundation of the defendant's title. By that description the north-westerly boundaries of the premises conveyed to the defendant, were the "cleft, or beach." The plaintiffs introduced in evidence, and claimed title under, "Dongan's patent" of 1686, which patent is not printed in the case, but was assumed to be a conveyance to the town of East Hampton of a tract including the premises in question. The plaintiffs also gave evidence, from old records of the town, tending to show the original allotment, of the farm occupied by the defendant, to certain of the inhabitants of the town in 1736. The description in the record of allotments is somewhat obscure, but all the premises proved to have been allotted at that time are bounded "westwardly by ye clift." This word is, in the conveyances which were introduced on the trial, sometimes "clift," sometimes "cleft" and sometimes "cliff," but was assumed to mean "cliff." As far as can be gathered from the testimony, there is no actual cliff, or steep precipice, or precipitous bank on the north-westerly side of

the defendant's farm at this time; the land, however, is more or less but irregularly elevated as it recedes from the shore of the sea. It does not appear how this was at the time of the allotments, or at the time of the execution of the deed of 1810. The kind of soil and its compactness, which exists between high-water mark, and the uplands of the defendant's farm, embracing the premises in question, tend to show that it was formed by gradual encroachments upon, and abrasions of the uplands by the waters of the sea, and whether there was any appreciable space at the time of the allotments, or at the time of the deed of 1810, between the uplands of the defendant's farm and high-water mark, does not appear. Jonathan B. Mulford entered into possession of the farm under the deed of 1810, and remained in possession till his death, in about the year 1843; and, although the premises in dispute were not inclosed, he claimed to own the same, and exercised such acts of possession and ownership over and upon the same as the nature of the premises was susceptible of, and according to the customs of that day. The judge, at the trial, ruled that the deed of 1810 carried the grantee entering under it to high-water mark. This ruling is excepted to, and its correctness depends upon the meaning of the word "beach" as used in that description, because it is conceded by the appellant that if the words "*beach*" and "*cleft*" were, at that time, in fact different points, then the grantee would take to the beach, the farthest point indicated. The court held, the word beach to be synonymous with shore, and that the grantee, under the deed of 1810, took to high-water mark. The interpretation given to the word by the court is not only in substance the same as that given by the various dictionaries in use, but is also in accordance with several judicial decisions of high authority. In *Cutts* v. *Hussey* (3 Shepley, 237), which involved the question, the court says: "By a 'beach' is to be understood the shore or strand, and it has been decided that the seashore is the space between high and low-water mark." In *Littlefield* v. *Littlefield* (28 Maine, 180), the language of the court is: "The word beach must be deemed to designate land washed by the sea and its waves, and to be synonymous with shore." Chief Justice SHAW, in delivering the opinion in *Doane* v. *Willcut* (5 Gray, 328), says: "The word 'beach' we consider, when used in reference to places

any where in the vicinity of the sea, or arm of the sea, as having a fixed and definite meaning, comprising the territory lying between the lines of high and low water, over which the tide ebbs and flows. It is in this respect like shore or strand." It is well settled that the right of soil of owners of land bounded by the sea, the shore of the sea, or strand, where the tide ebbs and flows, extends to high-water mark. (3 Kent's Com., 427; *Storer* v. *Freeman*, 6 Mass., 435.) The ruling of the judge at Circuit as to the interpretation of the description contained in the deed of 1810, was therefore correct. It was not suggested that there was, upon the evidence, any question of fact to be submitted to the jury. The evidence showed that Jonathan B. Mulford entered into possession, claiming title to the premises in dispute, under the deed of 1810, the claim, therefore, being founded upon a written instrument. This written instrument, if the ruling was correct, embraced the premises in dispute; and, under it, Mulford claimed title down to the beach, or high-water mark. He occupied the premises, so claiming title, down to his death in about the year 1843. His executors conveyed the premises by substantially the same description in 1846. And the defendant deduces a regular paper title down to himself, in 1861, with evidence of continued occupancy and claim. The evidence showed a title, by adverse possession, in Jonathan B. Mulford, existing for thirty odd years, unless a hostile occupancy or claim during that period, or continuing uninterruptedly for twenty years afterward, was shown. The testimony did show the occasional taking of seaweed from the seaward front of the farm by individuals, without, so far as appears, any authority and without any claim of right; and that the defendant had, in such cases, when it came to his knowledge, demanded and received compensation for the seaweed so taken. Seaweed cast up by the waves upon the shore, *prima facie*, belongs to the owner of the soil. (*Emans* v. *Turnbull*, 2 Johns., 313; *Phillips* v. *Rhodes*, 7 Metc., 322.) And, in the absence of any proof that the seaweed was taken by the individuals who took it, under any claim of title, the taking was presumptively referable to a tacit license, or to casual trespass, and did not constitute any hostile possession sufficient to interrupt the general possession of Mulford, and those succeeding him in the title. After the verdict was directed, the

plaintiff's counsel offered to show that the people of East Hampton, after the conveyance of 1810, occupied the " beach," by getting seaweed, without objection up to the time of the conveyence to Rogers. The conveyance to Rogers was in September, 1850, and not within twenty years previous to the commencement of the action. The offer was also defective, because it did not contain any offer to show that the persons who took the seaweed did so under any claim of right or title, or under any authority from the plaintiffs. The plaintiff also offered to prove that the word " *beach,*" as used and understood in Suffolk county, included all the sandy territory between the upland and high-water mark. This offer was rejected. The rule on this subject is that, as to words which are *purely* technical or local — that is, words which are not of universal use, but are familiarly known and employed either in a particular district, or a particular science or trade — parol evidence is admissible to define and explain their meaning. (1 Greenl. Ev., § 295.) The word offered to be interpreted here, by proof of the custom of the inhabitants of Suffolk county, is a word in general use, contained in the ordinary dictionaries, and which has received interpretation in several judicial decisions, and it would be very dangerous to receive such evidence to show that the intention of the grantor and grantee was different from that imported by the terms used, according to their general and legal signification. A similar question was presented in the case of *Littlefield* v. *Littlefield* (28 Maine, 180), and the court there stated the principle applicable to the question as follows : " The rule is, that parties to contracts are supposed to know and use language legitimately ; and, therefore, parol evidence that a word is used in a particular place, in a different sense from its true meaning, is inadmissible." So, in *Paull* v. *Lewis* (4 Watts, 402), it was held, that it was not competent to prove the general understanding of a county, as to the meaning of words used in a written contract for the sale of land.

There seems to be no valid ground for granting a new trial presented by the exceptions.

The order denying a new trial is affirmed.

Present — BARNARD, P. J., TAPPEN and TALCOTT, JJ.

Judgment affirmed with costs.